# HERMAN *v.* FULLMAN.

---

PATENTS; INTERFERENCE; EVIDENCE; RES JUDICATA.

1. The burden of proof in an interference case is on the junior party, who is the party last filing application.
2. Where the Commissioner of Patents has decided that one of several counts of the issue in an interference case did not present a case of interference as between the structures described in the applications of the parties, and thereupon dissolved the interference as to that count, the count will not be considered by this court on an appeal from his decision awarding priority of invention as to the other counts.

3. Where the junior party to an interference shows by his evidence a disclosure and reduction to practice prior to the filing date of the senior party's application, the burden of proof is shifted to the senior party to establish a date of invention and reduction to practice prior to that of the junior party.

4. The evidence in an interference case involving an improvement in a machine for making blue prints by artificial light, examined and reviewed and *held* to establish the fact that the senior party had reduced the invention to practice before the junior party, by making and operating a full-sized machine embodying the invention.

5. While the Commissioner of Patents, during the pendency before him of an interference, may for cause appearing suspend the proceeding and refer the case back to the primary examiner for review of the question whether the interference was rightfully declared, the question of whether one of the parties has a right to make the claim in issue is determined and becomes *res judicata* by the declaration of interference so far as the interference proceeding is concerned.

6. A discrepancy between the date of the reduction to practice as stated in the preliminary statement of one of the parties to an interference and that shown by his evidence cannot be availed of by the other party to prevent such evidence being considered, where it does not appear that any harm or prejudice has been caused to such other party by the variance, especially where the dates furnished in the proof are later than those given in the preliminary statement.

No. 244.  Patents Applied.  Submitted November 20, 1903.  Decided March 1, 1904.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.            *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Henry C. Evert* and *Mr. Joseph B. Connolly* for the appellant.

*Mr. John H. Roney* and *Mr. George R. Hamlin* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This is an appeal from the Patent Office in the matter of an

interference declared between the application of Reinhold Herman filed October 1, 1901, and the application of James M. G. Fullman filed July 24, 1901; the said applications being for patents for an improvement in a machine for making blue prints by artificial light, instead of the former method of producing blue prints by means of sunlight. Fullman being first to file his application occupies the position of senior party of record, and consequently the onus of proof to overcome the prima facie case thus made in his favor is upon Herman. The issue is declared in five sections or counts as follows:

"1. In an apparatus for copying or reproducing drawings, etc., the combination of a cylinder, means to support the subject-matter to be copied or reproduced upon the exterior of said cylinder, an arc-lamp adapted to be lowered into the interior of said cylinder, and means to automatically break the circuit for the purpose of extinguishing the light.

"2. A printing-frame and a lamp, movable one in relation to the other, in combination with an automatic device to cut off the light upon the completion of the printing process.

"3. In an apparatus for copying drawings, etc., the cylindrical printing-frame, the suspended electric lamp and means for controlling its descent within the frame, an electric switch controlling the light-circuit, and means for automatically opening the switch when the lamp has completed its travel.

"4. In an apparatus for copying drawings, etc., the cylindrical support for the drawing, a suspended lamp arranged to descend axially within the frame, a governing apparatus for controlling the descent of the lamp, and the automatically-operated switch controlling the light-circuit.

"5. In an apparatus for copying or reproducing drawings, etc., the combination of a cylinder adapted to be rotated, means to support the subject-matter to be copied or reproduced upon the exterior of said cylinder, an arc-lamp adapted to be lowered into said cylinder, and means to automatically break the circuit for the purpose of extinguishing the light."

With respect to this last or fifth count the Commissioner held that it did not in fact present a case of interference as between

the structures described in the two applications, and he therefore dissolved the interference as to the fifth count. The question of interference on this appeal, therefore, must be considered with respect to counts one to four inclusive, irrespective of the fifth count.

Herman, upon whom rests the burden of proof, alleges in his preliminary statement, conception and the making of drawings, in October, 1900; disclosure in January; and reduction to practice, by making a full-sized machine, in June, 1901.

Fullman, in his preliminary statement, alleges conception on or about June 6, 1900; the making of drawings on or about June 12, 1900; disclosure to others on or about June 12, 1900; and the reduction of the invention to practice by the construction of a full-sized, working apparatus on or about the 10th of July, 1900. As we have stated, his filing date was the 24th day of July, 1901.

The question presented to and decided by the tribunals of the Patent Office was purely one of fact, and all three of the tribunals in that Office concurred in holding Fullman to be entitled to priority of invention. They found as matter of fact, and so held, that while Herman had conceived and reduced his invention to practice, yet the reduction to practice was not prior to June, 1901, the time alleged in his preliminary statement; and that the disclosure and reduction to actual practice on the part of Fullman was found to be between March 25 and April 1, 1901, and, consequently, priority of invention was required to be awarded to Fullman.

It was found from the evidence by the tribunals of the Patent Office, and we think properly found, that Herman had by June 1, 1901, successfully reduced the invention of the issue to practice. And the 1st of June, 1901, being the date of disclosure and reduction to practice, and that date being prior to the date of filing the application by Fullman, the burden of proof is thereby shifted to Fullman to establish a date of invention and reduction to practice prior to June 1, 1901. This was found to have been done by Fullman by the tribunals of the Patent Office, and we think their finding was in all respects correct.

In his testimony, Fullman states that, on March 25, 1901, he completed a full-sized machine. This statement of fact is corroborated by evidence of circumstances that place the contention of Fullman beyond serious question. It appears from the evidence in the case that a blue-print machine was bought from the Pittsburgh Blue-Print Company, by the Pittsburgh & Lake Erie Railroad Company, and was placed in their office early in March, 1901. This machine did not contain the automatic switch. But the Fullman Company, of which Fullman, the appellee, was a member, entered into a contract with the Pittsburgh & Lake Erie Railroad Company to erect said blue-print machine, and to provide the same with the automatic switch. This is not only shown by the testimony of witnesses, but is made clear beyond doubt by a letter, dated March 21, 1901, from the Pittsburgh & Lake Erie Railroad Company, written by Atwood, the chief engineer of the railroad company,. addressed to the Fullman Company in regard to the machine, and what was to be embraced in its construction. The writer of the letter says:

"GENTLEMEN: Referring to your proposition of March 8th, in which you agree to erect one electric blue-print machine in blue-print room, fifth floor of our terminal station. Our company to furnish woodwork required and the machine in the room, and you to mount the autogear main switch, the rheostat and automatic switch of your design on a slate slab, which you will also furnish.

"You will also mount the slab on the wall as directed, and furnich the *automatic switch* required to cut the current out when the lamp has made its full motion downward. You are also to furnish stop which will check the motion of the lamp gradually as it reaches its lowest position—all for the sum of $38.00. This proposition is hereby accepted."

This letter manifestly refers to the automatic switch, the subject of the issue of this interference; and shows that Fullman had reduced his invention to practical operation and use before this contract with the railroad company was made. In execu-

tion of the contract for setting up the machine with the improve-
ments attached, as mentioned in the letter, Dinkel, an employee
and foreman in the Fullman Company, was sent by the company
to erect the machine and apply the automatic switch.  He
testifies that he erected and operated the machine on March 25,
1901, but did not make any blue-prints.  He merely worked the
machine to see that all the parts worked properly.  Dinkel's evi-
dence is clear as to the construction and operation of the ma-
chine, and is corroborated as to about the time stated and shown
by the testimony of Stovel, who was superintendent of the work
that was done at the Pittsburgh & Lake Erie Railroad Company,
in Pittsburg, at the time.  Stovel states that a blue-print machine
installed by the Fullman Company was operated for making
blue-prints on April 1, 1901, when the terminal station at Pitts-
burg was opened.  Forsberg, a chief draftsman in the engineer's
office of the Pittsburgh & Lake Erie Railroad Company, at Pitts-
burg, testifies that the machine erected at their office by the Full-
man Company was completed and ready for operation prior to
April 1, 1901.  Stovel describes the machine, and its operation,
as follows:

"A glass cylinder for holding paper, an arc-lamp moving up
and down inside the cylinder, the movement of arc-lamp con-
trolled by reel with pendulum escape motion, current to arc-
lamp controlled by a double-pole fused switch, together with
rheostat and a spring switch for cutting out current when the
arc-lamp has reached the bottom of its travel."

He says that blue-prints were made and turned out by this
machine on April 1, 1901, and that such blue-prints were dis-
tributed to visitors of the railroad station building on that day.

We shall not be more specific in reciting the evidence in the
case.  That has been done quite fully by the tribunals of the
Patent Office, and especially in the opinion of the Commissioner
of Patents; and it would serve no useful purpose to repeat it.
We are satisfied with the conclusion reached by them.

But it is contended on the part of Herman, that though it be
conceded that Fullman was prior in reducing to practice the in-
vention claimed by him, still, he is not entitled to judgment of

priority of invention in this interference, because there is no adequate foundation in Fullman's application for the specific invention of this issue. But that question is one that cannot be presented in this case of interference. The question whether or not an applicant whose application is involved in an interference has a right to make the claim put in issue is determined, and becomes *res adjudicata,* by the declaration of interference, so far as the interference proceedings are concerned. Otherwise great confusion would be brought about in the proceedings in the Patent Office. It is to avoid such confusion that the law has provided for a special preliminary proceeding by which the question of interference and of priority of invention may be determined, and in such proceeding the question of the patentability of the claims to invention are not presented for determination after declaration of interference made. The question in the interference proceeding, after declaration made, is that of priority of invention alone. It is true, the Commissioner, while the proceeding on interference declared is pending before him on appeal, may, for cause appearing, suspend the interference proceeding and refer the case back to the primary examiner for review of the question, whether there is rightful ground for declaring interference. Rules of Practice, P. O. 126. But that question is not involved in the determination of the issue of interference.

There is also a question made, though not as required by rule 159 of the Patent Office, as to the right of Fullman to have his evidence considered, relating to disclosure and reduction to practice, under his preliminary statement. It is objected that because of a discrepancy between the date of reduction to practice as stated in the preliminary statement, and that shown in evidence, by Fullman, such evidence should not have been considered by the tribunals of the Patent Office, nor by this court on appeal. Such discrepancy does appear to exist, and Fullman, in his testimony, has offered an explanation as to how such discrepancy occurred. But it does not appear that any harm or prejudice has been produced to Herman by the variance. Rule 159 of the Patent Office declares that:

"Evidence touching the matter at issue will not be considered

on the hearing which shall not have been taken and filed in compliance with the rules. But notice will not be taken of merely formal or technical objections which shall not appear to have wrought a substantial injury to the party raising them; and in case of such injury it must be made to appear that, as soon as the party became aware of the ground of objection, he gave notice thereof to the office, and also to the opposite party, informing him at the same time that, unless it should be removed, he (the objector) should urge the objection at the hearing."

It does not appear that any harm or prejudice has been caused to Herman by this variance between the dates in the preliminary statement and those shown in the proof produced by Fullman. The dates furnished in the proof are later than those stated in the preliminary statement; and it is not perceived how prejudice could well be produced by such discrepancy. We think, therefore, there is no ground or proper foundation for excluding the evidence from consideration.

Being of opinion that the question of priority of invention was properly decided in the Patent Office, we shall affirm the decision of the Commissioner of Patents, and direct that the proceeding and this decision be certified to the Commissioner of Patents, as directed by law. *Decision affirmed.*